IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS L. HONEYCUTT,      )
                                   )
          Plaintiff,       )
                                   )
v.                             )     Case No. CIV-08-140-W
                                 )
JOHN W. MITCHELL, *et al.*,    )
                                 )
          Defendants.    )

**REPORT AND RECOMMENDATION
CONCERNING THE MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS RINGGOLD AND ALBERTY**

Mr. Thomas Honeycutt has sued Ms. Stephanie Ringgold for:

- deliberate indifference to medical needs

- unconstitutional conditions of confinement by forcing the Plaintiff to spend three nights in a cell that was leaking sewage

- deprivation of due process through interference with the grievance process

- denial of due process through interference with the Court's order to collect and forward payments and

- retaliation.

Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 2-4 (Apr. 15, 2008)

("Amended Complaint").

Defendant Shirley Alberty is allegedly responsible for:

- unconstitutional conditions of confinement through the denial of eating utensils and inadequacy of food portions and

- retaliation.

*Id.* at pp. 3, 5.

Defendants Ringgold and Alberty seek summary judgment. The Court should grant Ms. Alberty's motion. For Ms. Ringgold, the Court should grant the motion for summary judgment on all of the claims except those concerning:

- unconstitutional conditions of confinement and

- interference with the Court's order to collect and forward payments.

Defendant Ringgold is not entitled to judgment on the first claim and failed to address the second one.

## STANDARD FOR SUMMARY JUDGMENT

As movants, Ms. Ringgold and Ms. Alberty bear the burden to establish their right to summary judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002). Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits[1] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

---

[1]    For purposes of summary judgment, the verified amended complaint is treated as an affidavit. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*).

DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

Mr. Honeycutt accuses Ms. Ringgold of an Eighth Amendment violation[2] through deliberate indifference to serious medical needs.[3]  The parties disagree on some issues, but the disputes are immaterial and Ms. Ringgold is entitled to summary judgment on the medical claims.

I.    Characterization of the Plaintiff's Medical Claims

Two distinct types of Eighth Amendment claims exist.  In the first category, a medical professional fails to properly treat a serious medical condition.  *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).  In the second category, a prison official "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment."  *Id.* (citation omitted).

Mr. Honeycutt's claims fall into the second category.  According to the Plaintiff, Defendant Ringgold is a jail administrator responsible for seeing "that the jail runs in compliance, [and] that the jailers abide with the rules insuring a safe enviorment [sic]."

---

[2]    Because Mr. Honeycutt was a pretrial detainee during the relevant time period, his claims are governed by the Fourteenth Amendment's Due Process Clause.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  But the scope of the constitutional protection is the same under either the Eighth Amendment or the Fourteenth Amendment's Due Process Clause.  *See id.*

[3]    The Plaintiff has clarified that his claims concerning the delay in access to a physician and denial of hernia treatment do not extend to Ms. Alberty.  *See* Plaintiff's Notice of Clarification (Feb. 13, 2009).

Amended Complaint at p. 3.  Defendant Ringgold allegedly prevented treatment and denied

access to medical personnel through:

- refusal to transport the Plaintiff to the hospital on the day of his arrival at the Kay County Detention Center

- postponement of a medical examination for 40 days and

- denial of medical treatment for a hernia.

*Id.* at pp. 2-4.

## II.   Eighth Amendment:  Deliberate Indifference to Serious Medical Needs

The Eighth Amendment requires prison officials to "provide humane conditions of

confinement" for inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  As a result,

deliberate indifference to a prisoner's serious injury is actionable under Section 1983.  *See*

*Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  A prison official violates the Eighth

Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate

indifference" to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. at 834.

## III.   Subjective Component - Deliberate Indifference

In the amended complaint, Mr. Honeycutt alleges a delay of more than 40 days before

he could see a doctor.  Amended Complaint at p. 4.  Ms. Ringgold argues that she is entitled

to judgment as a matter of law on the subjective element of the Eighth Amendment.[4]  She is correct.

In part, Ms. Ringgold seeks summary judgment on grounds that she lacked authority to determine when Mr. Honeycutt could see a doctor.  Motion for Summary Judgment of Defendants Stephanie Ringgold and Shirley Albert, and Brief in Support at pp. 12-13 (Nov. 10, 2008) ("Defendants' Motion for Summary Judgment").  In her summary judgment brief, Ms. Ringgold states that she "is not, and was not, the official who makes the determination whether emergency care or hospitalization is necessary or what medical treatment is required."  Id. at p. 5 ¶ 16.  For this factual allegation, Ms. Ringgold relies on her sworn statement that she is "not a medical professional and [she was] not the official who determine[d] whether emergency care or hospitalization [was] necessary or what medical treatment [was] required."  Id., Exh. 2, p. 2 ¶ 9.  The Plaintiff's responses to this statement would not suggest deliberate indifference on Ms. Ringgold's part.

For example, in response to the Defendants' statement of undisputed facts, the Plaintiff asserts that Ms. Ringgold had "delayed scheduling an appointment with the doctor."  Plaintiff's Response to Defendants Stephanie Ringgold and Shirley Alberty's Motion for Summary Judgment at p. 7 ¶ 16 (Dec. 8, 2008) ("Plaintiff's Response").  In an effort to create a factual dispute on this issue, Mr. Honeycutt relies solely on the following passage from his deposition:

---

[4]     Ms. Ringgold was not clear on whether she was challenging the seriousness of Mr. Honeycutt's medical conditions.  But the Plaintiff has failed to establish the subjective element of the Eighth Amendment.  See infra pp. 5-13.  Thus, the Court need not decide whether Ms. Ringgold was intending to address the objective element.

Q.      Yes.  What medical was your complaint?

A.      I couldn't see a doctor because my back was hurting.

*Id.* at p. 6 ¶ 16, Exh. 1 at p. 132.

Even when this passage is construed favorably to Mr. Honeycutt, it would not suggest any authority on the part of Ms. Ringgold for determining the need for a doctor's examination.

Elsewhere in his response brief, the Plaintiff attributes the delay in seeing a back specialist or obtaining hernia surgery to Ms. Ringgold's refusal to allow hospitalization because of a lack of funds at the jail.  Plaintiff's Response at p. 4.  For this assertion, Mr. Honeycutt relies on pages 156-57, 160-61, and 171 of his deposition.  *Id.*  Again, these pages do not suggest deliberate indifference on Ms. Ringgold's part.

For example, the cited excerpt on pages 156 and 157 states:

Q.      Did he prescribe any medications for you?

A.      Not at first.  He advised me that as soon as I was released I needed to go seek professional medical help in the field of back injuries because my back was messed up.  He said you can see that it isn't lined up right.

Q.      Okay.

A.      He said you got something wrong.

*Id.*, Exh. 1 at pp. 156-57.  This excerpt does not mention Ms. Ringgold or suggest any responsibility on her part for determining whether to authorize a hospital visit for Mr. Honeycutt.

Mr. Honeycutt also relies on an excerpt at pages 160 to 161 of his deposition. *Id.* at p. 12. This excerpt provides:

Q.     It's my understanding you had a hernia surgery?

A.     Yes.

Q.     When did that occur?

A.     Excuse me?

Q.     When did your hernia surgery occur?

A.     When I was here.

Q.     While you've been here at Jackie Brannon it occurred?

A.     Yes.

Q.     When were you diagnosed with a hernia?

A.     At the county jail.

Q.     And who diagnosed that?

A.     The nurse.

Q.     What were your symptoms of that that she knew you had a hernia?

A.     I told her that I was burning real bad in my hip and she asked me what I meant, you know, about where the end of your watch pocket is.

Q.     Okay.

A.     And she said what do you mean.  I said, I feel like somebody is putting a cigarette in the joint right there and burning me.  And she told them open the door and let me out and she said let's go back there.  And she got me to lay down and I laid down and she felt on both sides and she said I don't feel nothing.  And I said, well, when I stand up you can feel

7

it.  And she proceeded to tell me that I had a hernia.  And then when the
doctor came in, he said yeah, he said you have a hernia.

*Id.*, Exh. 1 at pp. 160-61.  Again, this excerpt does not refer to Ms. Ringgold or suggest any

responsibility or authority on her part to determine whether Mr. Honeycutt could see a doctor

or go to a hospital.

At page 171, the Plaintiff did testify regarding statements involving a lack of funds

for hospitalization.  The cited excerpt provides:

Q.    You've also made some allegations that the jail administrator refused
to send you to the hospital because the hospital didn't have any money
for a doctor.

A.    No.

Q.    I'm sorry?

A.    The jail didn't have any money.

Q.    I'm sorry, what did I say, did I say the hospital didn't have any money?
I'm sorry.  The jail didn't have any money.  Tell me about that.

A.    That's what she told me.

Q.    What was that in relation to?

A.    My back.

Q.    You were allowed to see a nurse for your back.  Correct?

A.    Yes, and I seen a doctor too.

*Id.*, Exh. 1 at p. 171.

8

The cited testimony relates only to the inability to obtain hospitalization for back treatment rather than the hernia.  Thus, for the claim involving hernia treatment, the excerpt would not support liability on the part of Ms. Ringgold.

Even on the claim involving back treatment, the excerpt would not suggest deliberate indifference by Ms. Ringgold.  Conceivably, the excerpt could create an inference that the jail had provided treatment by a doctor and nurse, but would not authorize hospitalization for back pain because of a lack of funds.  Still, the undisputed authorization for treatment by a doctor and nurse would prevent liability even if hospitalization for back pain had been unavailable solely because of the cost.

While incarcerated, a person is constitutionally entitled to adequate medical care.[5]  But the individual is not constitutionally entitled to unlimited medical care without regard to

---

[5]      *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("The Eighth Amendment prohibits the government from incarcerating prisoners without providing adequate medical care." (citation omitted)).

9

cost.[6]  Cost is a legitimate consideration,[7] and the constitution permits officials to decline

certain kinds of expensive treatment if they provide adequate medical care.[8]

As noted above, the Plaintiff acknowledges that he was able to obtain treatment by

a doctor and nurse for his back.  *See supra* p. 8.

Regardless of Ms. Ringgold's alleged intent to save money, the issue would remain

whether the actual treatment was constitutionally adequate.[9]  The undisputed evidence would

preclude civil liability for Ms. Ringgold even if she had declined to authorize hospital care

for the back problems.

---

[6]     *See Taylor v. Barnett*, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000) ("While inmates are
entitled to adequate medical care under the Eighth Amendment, they are not entitled to the best and
most expensive form of treatment." (citation omitted)).

[7]     *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment
alternatives is a factor in determining what constitutes adequate, minimum-level medical care . . . ."
(citation omitted)); *see also Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) (Alito, J.) ("the
deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free
from the cost considerations that figure in the medical-care decisions made by most non-prisoners
in our society").

[8]     *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) ("the local government's
interest in limiting the cost of detention justifies providing no more than a reasonable level of
medical care"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1573 (11th Cir. 1985) ("The state's
interest in limiting the cost of detention . . . ordinarily will justify the state's decision to provide
detainees with a reasonable level of . . . medical care.").

[9]     The Seventh Circuit Court of Appeals upheld summary judgment for a provider of prison
medical services in *Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d 508 (7th Cir.
1999).  There an inmate alleged a policy restricting hospital access in order "to keep costs down."
*Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d at 513.  The court rejected the
allegation, stating:  "If there was no constitutional violation on the part of the individual defendants,
however, [the prison medical service provider's] policies could not have caused one, even if they
were trying to keep costs down - a common goal in this age of health maintenance organizations."
*Id.* at 513-14.

The alleged refusal to authorize hospital care would be actionable only if the need had been "obvious." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). The Tenth Circuit Court of Appeals has explained the meaning of "obviousness":

> [O]bviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Id*. (citations omitted). These circumstances are absent, and the Plaintiff lacks evidence of an obvious deficiency in the actual treatment for his back pain.

A similar issue arose in *Boyett v. County of Washington*, 282 Fed. Appx. 667 (10th Cir. June 19, 2008) (unpublished op.), *cert. denied*, __ U.S. __, 129 S. Ct. 647 (2008). There an inmate died while in prison, and his survivors sued under Section 1983 for deliberate indifference from a failure to provide treatment by a doctor. *See Boyett v. County of Washington*, 282 Fed. Appx. at 669, 673-74. The federal district court granted summary judgment to the defendants, and the Tenth Circuit Court of Appeals affirmed. *Id.*, 282 Fed.

Appx. at 669.  In affirming, the appeals court explained that prisons can generally provide

medical care through nurses rather than doctors:

> As a preliminary matter, there is no *per se* requirement  that a jail provide its
> inmates around-the-clock access to a medical doctor.   While jailers are
> ultimately responsible for their inmates' medical needs, they can provide that
> care in a variety of ways, including access to trained personnel such as guards
> in the first instance, nurses, and physicians' assistants. . . .  While access to a
> medical doctor may be necessary in certain situations, no constitutional
> violation occurs unless medical care is intentionally or recklessly denied.

*Id.*, 282 Fed. Appx. at 673-74 (citations omitted).  Applying this standard, the appeals court

concluded as a matter of law that the provision of medical care through nurses, a physician's

assistant, and a social worker precluded a finding of deliberate indifference notwithstanding

the absence of treatment by a doctor.  *Id.*, 282 Fed. Appx. at 674.

   *Boyett v. County of Washington* is persuasive in light of the similarity in facts and the

applicability of its reasoning.  *See* Tenth Cir. R. 32.1(A).  Mr. Honeycutt admittedly saw a

nurse within "[a] couple [of] days" of his arrival at the detention center.  Plaintiff's Response,

Exh. 1 at p. 134.  And Mr. Honeycutt conceded that no one had ignored his request to see a

nurse.  *Id.* at p. 133.

   The nurse noted in her records that she had checked the blood pressure and started Mr.

Honeycutt on Anytriptline, Hytrin, Doxipen, Tegretol, and Terazosin.  Defendants' Motion

for Summary Judgment, Exh. 2, Exh. C.  Eleven days later, the Plaintiff stated that his back

condition had not improved and requested an appointment with a doctor.  *Id.*, Exh. 2, Exh.

D.  Ms. Ringgold forwarded the request "to the facility nurse for review and/or assessment."

*Id.*

The nurse examined Mr. Honeycutt fifteen days later and stated that she would monitor the situation and contact Dr. Davis. *Id.*, Exh. 2, Exh. E. Four days later, the nurse again examined Mr. Honeycutt and stated that she would "contact Dr. Davis to come back and see inmate." *Id.*

Either Dr. Davis or the nurse again examined Mr. Honeycutt two days later and authorized a regimen involving multiple medications to alleviate the back pain. *Id.*

From these historical events, the fact-finder would need to decide whether Ms. Ringgold had intentionally or recklessly disallowed hospital care. *See supra* pp. 11-12. Like the prisoner in *Boyett*, Mr. Honeycutt obtained medical care from a nurse upon request. The Plaintiff does not suggest that the nurse had asked Ms. Ringgold to arrange further medical care at a hospital. Thus, liability cannot be predicated on Ms. Ringgold's alleged remark about the lack of funds for hospital care.

## UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

The Plaintiff also alleges violation of the Eighth Amendment through unconstitutional conditions of confinement. According to the Plaintiff, he was forced by Ms. Ringgold to spend three nights in a cell with raw sewage and acid leaking from the drain. *See* Amended Complaint at p. 3. The allegation against Ms. Alberty is that she forced the Plaintiff to eat without utensils, provided inadequate food portions, and refused to supply beverages. *See id.* The Court should overrule Ms. Ringgold's motion for summary judgment, but grant summary judgment to Ms. Alberty.

I.      Standard for Conditions of Confinement Claims

The Eighth Amendment "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain . . . .'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted).  To prevail on such a claim, a prisoner must show both that prison officials acted with a "'sufficiently culpable state of mind'" and that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted).

II.     Claim Against Defendant Ringgold

Ms. Ringgold is accused of allowing the Plaintiff to remain in a cell leaking raw sewage and acid fumes for three consecutive nights.  *See supra* p. 13.  The Court should overrule Defendant Ringgold's request for summary judgment on this claim.

A.      Material Facts as Construed in Favor of the Plaintiff

The evidence would reasonably allow the fact-finder to conclude that:

- Mr. Honeycutt informed prison officials that raw sewage was leaking from the drain in his cell.[10]

- Sulphuric acid was poured down the drain, and the acid and raw sewage continued to leak from the drain for several days.[11]

---

[10]     *See* Amended Complaint at p. 3; Defendants' Motion for Summary Judgment at p. 6 & Exh. 1 at p. 151; Plaintiff's Response at p. 5 & Exh. 1 at p. 147.

[11]     *See* Amended Complaint at p. 3; Defendants' Motion for Summary Judgment at pp. 6-7 & Exh. 1 at p. 152; Plaintiff's Response, Exh. 1 at pp. 149-51.

- Mr. Honeycutt remained outside of the cell during the day, but had to sleep in the cell for three nights before the problem was resolved.[12]

- Ms. Ringgold was responsible for repair of the leak and the decision whether to relocate Mr. Honeycutt.[13]

B.    Defendant Ringgold's Request for Judgment as a Matter of Law

Defendant Ringgold contends that she is entitled to judgment as a matter of law for three reasons.

First, she claims that because the conditions only lasted three nights, Mr. Honeycutt cannot establish sufficient harm.  Defendants' Motion for Summary Judgment at p. 15.  Ms. Ringgold is incorrect.

Construed in a light favorable to Mr. Honeycutt, the evidence would indicate exposure to raw sewage and leaking sulphuric acid for three nights.  *See supra* pp. 14-15.  And, a three-day period amidst human waste could entail a sufficiently serious condition to trigger constitutional protection.[14]  Consequently, Defendant Ringgold is not entitled to summary judgment based on insufficiency of the harm.

---

[12]     *See* Defendants' Motion for Summary Judgment at p. 7 & Exh. 1 at pp. 151-52, 176; Plaintiff's Response at p. 5 & Exh. 1 at p. 151.

[13]     *See*, *e.g.*, Plaintiff's Response, Exh. 1 at p. 152 (indicating that "Stephanie" brought maintenance to fix the leak), p. 153 (noting that when Mr. Honeycutt had complained to "Stephanie," her response was that authorities had "no room to put [him] anywhere else").

[14]     *See McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (noting that "human waste has been considered particularly offensive" and "'too debasing and degrading to be permitted'" (citation omitted)); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (reversing the grant of summary judgment on grounds that an inmate's three-day exposure to flooding raw sewage could involve unconstitutional conditions of confinement).

Second, Defendant Ringgold contends that because there were no other cells available, "the failure to move [Mr. Honeycutt] was not the result of deliberate indifference." Defendants' Motion for Summary Judgment at p. 16.   However, the Plaintiff suggests that he could have been relocated to another section of the detention center,[15] and Ms. Ringgold did not present any contradictory evidence.   Construing the evidence in a light favorable to Mr. Honeycutt, the fact-finder could conclude that other secure space in the facility was available.   Thus, the fact-finder could conclude that Ms. Ringgold had acted with a sufficiently culpable state of mind when she refused to move the Plaintiff from the damaged cell.

Third, Ms. Ringgold argues that she did not personally participate in the treatment of the toilet leak.   *Id.* at p. 20.[16]   This argument does not address the Plaintiff's allegation of deliberate indifference by keeping him housed in a cell which leaked sewage and acid for three consecutive nights.[17]   As a result, summary judgment is not available on grounds involving Ms. Ringgold's lack of personal participation.

---

[15]     *See* Defendants' Motion for Summary Judgment, Exh. 1 at p. 174.

[16]     This defense was raised in connection with Ms. Ringgold's request for qualified immunity.

[17]     *See* Amended Complaint at p. 3; *see also* Motion for Summary Judgement Against Defendant Ringgold at p. 4 (July 14, 2008) (reiterating the accusations against Defendant Ringgold).

16

C.    Defendant Ringgold's Defense of Qualified Immunity

Defendant Ringgold also asserts qualified immunity.[18]   Defendants' Motion for Summary Judgment at pp. 18-20.   In light of the assertion of qualified immunity, Mr. Honeycutt must identify a specific constitutional right and show that it had been clearly established before the alleged misconduct.   *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

Ms. Ringgold does not question the clear establishment of a right to be free from raw sewage in one's cell.   Instead, she claims entitlement to qualified immunity on grounds that the Plaintiff has failed to establish an underlying constitutional violation.   *See* Defendants' Motion for Summary Judgment at pp. 19-20.   She is incorrect, as discussed above,[19] and the Court should reject her argument for qualified immunity.

III.   Claims Against Defendant Alberty

According to Mr. Honeycutt, Defendant Alberty failed to provide adequate food portions and "at time[s]" would fail to provide beverages and eating utensils.   Amended Complaint at p. 3.   Defendant Alberty seeks summary judgment on the claims, and the Court should grant the request.

---

[18]    Ms. Ringgold seeks qualified immunity on all of the claims.   However, she is entitled to summary judgment on other grounds with respect to the claims involving medical inattention.   *See supra* pp. 3-13.   Consequently, the Court need not address the qualified immunity argument on these claims.   *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998).

[19]    *See supra* pp. 14-16.

A.     Alleged Lack of Food

In part, the Plaintiff accuses Ms. Alberty of a refusal to "comply with any nutrishenist [sic] requirements concerning calories intake." *Id.* at p. 3. This claim is invalid as a matter of law.

"A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (citation omitted).

Defendant Alberty points out that the Plaintiff had admittedly received three meals a day and challenges the evidence of nutritional inadequacy. *See* Defendants' Motion for Summary Judgment at p. 21. In response, Mr. Honeycutt was required to present evidence that his food deprivation was substantial.[20] But by his own testimony, the prison meals lacked a "calorie content" only "on certain occasions." Defendants' Motion for Summary Judgment, Exh. 1 at p. 169. This evidence is insufficient for "substantial" food deprivation,[21] and summary judgment is appropriate for Ms. Alberty on the claim.

B.     Alleged Lack of Beverages and Eating Utensils

Mr. Honeycutt also alleges that Defendant Alberty periodically deprived him of beverages and eating utensils. *See* Amended Complaint at p. 3. Defendant Alberty avers that

---

[20]     *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) ("A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." (citations omitted)), *cert. denied*, __ U.S. __, __ S. Ct. __, 2009 WL 34988 (Mar. 9, 2009).

[21]     *See Berry v. Brady*, 192 F.3d 504, 506, 508 (5th Cir. 1999) (holding as a matter of law that an inmate's Section 1983 claim, involving the denial of eight meals over seven months, was frivolous).

cups and utensils were unavailable only on two occasions,[22] and the Plaintiff's testimony confirms that the condition lasted "[j]ust one or two days, one or two meals at a time."[23]

Defendant Alberty moves for judgment as a matter of law on grounds that the lack of beverages and utensils for one to two days does not rise to the level of a constitutional violation. The undersigned agrees.[24]

## IV.   Summary

The Court should grant Defendant Alberty's motion for summary judgment on the claims involving conditions of confinement. Defendant Ringgold's motion should be overruled.

## DEPRIVATION OF DUE PROCESS

Mr. Honeycutt accuses Ms. Ringgold of a due process violation through interference with the grievance process[25] and failure to comply with this Court's order to collect money

---

[22]   Defendants' Motion for Summary Judgment at p. 6 & Exh. 3 at p. 2.

[23]   Defendants' Motion for Summary Judgment, Exh. 1 at p. 144.

[24]   *See*, *e.g.*, *Stanley v. Page*, 44 Fed. Appx. 13, 15 (7th Cir. Aug. 20, 2002) (unpublished op) (stating that a prisoner's claim regarding denial of utensils and a need to eat with his hands described only a "temporary inconvenience" and was not cognizable under the Eighth Amendment); *Hicks v. Emerson*, 972 F.2d 337, 1992 WL 188885, Westlaw op. at 2 (1st Cir. Aug. 10, 1992) (unpublished op.) (holding that a prisoner was not entitled to relief because "one-time denial of eating utensils was not a significant deprivation violative of the Eighth Amendment"); *Martin v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (holding that a prisoner's allegations concerning the lack of eating utensils were "not cognizable").

[25]   Mr. Honeycutt identifies the "Defendants jailiers [sic] Administrator" as the party liable for lack of grievance responses. Amended Complaint at p. 5. Ms Ringgold is the only party that meets this description. *See id.* at p. 3.

for payment of the filing fees.  Amended Complaint at p. 5.  Defendant Ringgold addresses the first claim, but not the second.

On the first claim, Ms. Ringgold is entitled to summary judgment because Mr. Honeycutt lacks a due process right to obtain answers to his grievances.  In the absence of interference with court access, alleged errors in the handling of grievances would not implicate the Fourteenth Amendment's Due Process Clause.[26]  Mr. Honeycutt has not presented evidence of an inability to access the courts because of a failure to respond to his grievances.  Consequently, Defendant Ringgold is entitled to summary judgment on this claim.

## ALLEGED RETALIATION

Finally, the Plaintiff alleges that if inmates had filed grievances, prison officials would "get mad," "suspend[] visits [and] comisary [sic]," and would "cuss[]" pretrial detainees or use "peper [sic] spray or mace (sometimes) without justification."  *Id.*  The Defendants seek summary judgment, partly on grounds that Mr. Honeycutt had failed to establish retaliation. Defendants' Motion for Summary Judgment at p. 18.

---

[26]     *See Walters v. Corrections Corporation of America*, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.) (holding that a prisoner's "alleged denial of access to state administrative grievance procedures" would not have "resulted in a violation of his constitutional rights"); *Rauh v. Ward*, 112 Fed. Appx. 692, 693-94 (10th Cir. Oct. 14, 2004) (unpublished op.) (upholding dismissal of a prisoner's Section 1983 claim involving denial of access to the administrative grievance procedure in light of his access to the courts); *see also Davis v. Oklahoma Department of Corrections*, 2007 WL 869650, Westlaw op. at 1, 11-12 (W.D. Okla. Mar. 20, 2007) (unpublished op.) (holding that hindrance of the ability to exhaust administrative remedies would not implicate a prisoner's due process rights); *accord Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." (citation omitted)).

In response, the Plaintiff has not presented evidence of his own victimization.[27]  Mr. Honeycutt cannot recover on behalf of other inmates,[28] and Ms. Ringgold and Ms. Alberty are entitled to summary judgment on this claim.

## SUMMARY OF RECOMMENDATIONS

The summary judgment motion should be granted on the claims involving:

●     Defendant Ringgold's deliberate indifference to serious medical needs

●     Defendant Ringgold's interference with the grievance process

●     retaliation by Ms. Ringgold and Ms. Alberty and

●     Defendant Alberty's creation of unconstitutional conditions of confinement through the denial of eating utensils, beverages, and adequate food portions.

The Court should overrule Defendant Ringgold's motion for summary judgment on the Plaintiff's claim involving three nights in a cell with leaking sewage and acid from a floor drain.

Defendant Ringgold did not address the Plaintiff's allegation of a failure to comply with the Court's order to collect money from Mr. Honeycutt's trust account for payment of the filing fee, and this claim should survive the disposition motion.[29]

---

[27]    Instead, Mr. Honeycutt asserted a new allegation that the Defendants' alleged refusal to respond to his grievances was retaliatory.  Adoption of this report would leave claims remaining against Defendant Ringgold.  *See supra* pp. 13-17.  If the Plaintiff wishes to assert a new retaliation claim, he could seek leave to amend for this purpose.

[28]    *See Swoboda v. Dubach*, 992 F.2d 286 (10th Cir. 1993).

[29]    The alleged lapse appears to benefit Mr. Honeycutt by allowing him to avoid installment payments on the filing fee.  But Ms. Ringgold and Ms. Alberty have not discussed the claim.  As a result, the Court need not address the existence of an injury in fact on this claim.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation.  Any such objection must be filed with the Clerk of this Court by April 23, 2009.  *See* W.D. Okla. Local Civil Rule 72.1.  The failure to timely object would foreclose appellate review of the suggested rulings.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is not terminated.

Entered this 3rd day of April, 2009.

Robert E. Bacharach
United States Magistrate Judge